# 26-0236

## United States Court of Appeals

*for the*

## Second Circuit

A.C.R., on behalf of themselves and all others similar situated, J.G.V., on behalf of themselves and all others similar situated, E.A.R., on behalf of themselves and all others similar situated, C.V.R., on behalf of themselves and all others similar situated, Y.A.M., on behalf of themselves and all others similar situated, B.R.C., on behalf of themselves and all others similar situated, J.C.B., on behalf of themselves and all others similar situated, L.M.R., on behalf of themselves and all others similar situated, S.M.M., on behalf of themselves and all others similar situated, CENTRAL AMERICAN REFUGEE CENTER, (CARECEN-NY), CENTRO LEGAL DE LA RAZA,

*Plaintiffs-Appellants,*

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

ALEXANDER SHALOM
NATALIE J. KRANER
CATHERINE WEISS
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500

JOHN MAGLIERY
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
(212) 489-8230

*Attorneys for Plaintiffs-Appellants*

*(For Continuation of Appearances See Inside Cover)*

COUNSEL PRESS (800) 4-APPEAL • (395989)

– v. –

KRISTI NOEM, Secretary, U.S. Department of Homeland Security (official capacity), UNITED STATES DEPARTMENT OF HOMELAND SECURITY, JOSEPH EDLOW, Director, United States Citizenship and Immigration Services (official capacity), UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ROSE KENDRICK, Acting Director, United States Citizenship and Immigration Services National Benefits Center (official capacity),

*Defendants-Appellees.*

WENDY WYLEGALA
KIDS IN NEED OF DEFENSE
252 West 37th Street, Suite 1500W
New York, New York 10018
(646) 677-9914

STEPHANIE E. NORTON
NATIONAL IMMIGRATION PROJECT
1763 Columbia Road, NW
Suite 175, No. 896645
Washington, DC 20009
(617) 217-9727

REBECCA S. BROWN
*Public Counsel*
610 South Ardmore Avenue
Los Angeles, California 90005
(213) 385-2977

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................1
ARGUMENT ....................................................................................4
I. This Appeal Is Not Moot. ....................................................................4
II. Defendants Obfuscate the Applicable Standard of Review ............................9
III. Plaintiffs Adequately Preserved the Issues on Appeal ..............................10
IV. The 2022 Policy Alert and Pre-Rescission Policy Manual Form a Single Integrated Policy. ....................................................................11
V. The Rescission of the USCIS Policy Manual's Strong Factors Standard Is Subject to, and Fails, APA Review. ....................................................14
A. The Policy Manual Imposed Binding Obligations on Adjudicators and Has Significant Legal Consequences. ....................................................15
B. Reinstatement of the Complete SIJS Deferred Action Policy, Including the Policy Manual, Would Not Intrude Upon a Matter Committed to Agency Discretion. ....................................................................19
C. The District Court Legally Erred When It Required the Strong Factors Standard to Be Applied Only to the *Accardi* Subclass. ....................................21
D. The Change-In-Position Doctrine Compels Restoration of the Manual, Including the Strong Factors Standard. ....................................................23
CONCLUSION ....................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abdi v. Duke*,
280 F. Supp. 3d 373 (W.D.N.Y. 2017), *vacated in part on other grounds sub nom.*, *Abdi v. McAleenan*, 405 F. Supp. 3d 467 (W.D.N.Y. 2019) ....................26

*Accardi v. Shaughnessy*,
347 U.S. 260 (1954)........................................................................... *passim*

*Amador v. Andrews*,
655 F.3d 89 (2d Cir. 2011) ....................................................................6

*Apter v. Department of Health & Human Services*,
80 F.4th 579 (5th Cir. 2023) .........................................................16, 17

*Aracely, R. v. Nielsen*,
319 F. Supp. 3d 110 (D.D.C. 2018)......................................................26

*Arizona v. Biden*,
40 F.4th 375 (6th Cir. 2022) ................................................................18

*Bennett v. Spear*,
520 U.S. 154 (1997)...................................................................15, 17, 18

*Comer v. Cisneros*,
37 F.3d 775 (2d Cir. 1994) ...............................................................7, 8

*Damus v. Nielsen*,
313 F. Supp. 3d 317 (D.D.C. 2018)...............................................26, 27

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020)...........................................................20, 21, 24, 28

*FDA v. Wages & White Lion Invs., LLC*,
604 U.S. 542 (2025)...........................................................................21, 24

*Gonnella v. SEC*,
954 F.3d 536 (2d Cir. 2020) ..................................................................16

*Haitian Evangelical Clergy Ass'n v. Trump*,
789 F. Supp. 3d 255 (E.D.N.Y. 2025) ....................................................22

*In re Grand Jury Subpoena, Judith Miller*,
438 F.3d 1141 (D.C. Cir. 2006)................................................................19

*Kaplan v. Old Mut. PLC*,
526 F. App'x 70 (2d Cir. 2013) ................................................................11

*Kewayfati v. Bondi*,
165 F.4th 342 (5th Cir. 2026) ..............................................................16, 17

*League of Women Voters of the U.S. v. U.S. Citizenship & Immigr. Servs.*,
No. 25-CV-3777-ABA, 2026 WL 2224637 (D. Md. Aug. 3, 2026)..................14

*New York v. U.S. Dep't of Homeland Sec.*,
969 F.3d 42 (2d Cir. 2020) ........................................................................9

*Noel v. Chapman*,
508 F.2d 1023 (2d Cir. 1975) ..................................................................16

*Olson v. Brown*,
594 F.3d 577 (7th Cir. 2010) ......................................................................6

*Paskar v. UDOT*,
714 F.3d 90 (2d Cir. 2013) ...................................................................17, 18

*Patton v. Fitzhugh*,
131 F.4th 383 (6th Cir. 2025) .....................................................................8

*Perez v. Mortgage Bankers Ass'n*,
575 U.S. 92 (2015).................................................................................24, 25

*Physicians for Social Responsibility v. Wheeler*,
956 F.3d 634 (D.C. Cir. 2020), *abrogated on other grounds as recognized by Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218 (D.C. Cir. 2026)..25

*R.F.M. v. Nielsen*,
365 F. Supp. 3d 350 (S.D.N.Y. 2019) ....................................................25

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ......................................................................6

*Salazar v. King*,
822 F.3d 61 (2d Cir. 2016) ....................................................6, 10, 15, 17

*SEC v. Rajaratnam*,
918 F.3d 36 (2d Cir. 2019) ...............................................................11

*Tennessee v. Dep't of Edu.*,
104 F.4th 577 (6th Cir. 2024) ...........................................................27

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
162 F.3d 724 (2d Cir. 1998) ...............................................................9

*United States v. Caceres*,
440 U.S. 741 (1979)...........................................................................19

*Van Buskirk v. United Grp. of Cos., Inc.*,
935 F.3d 49 (2d Cir. 2019) .................................................................9

*Vintero Corp. v. Corporacion Venezolana de Fomento*,
675 F.2d 513 (2d Cir. 1982) .............................................................11

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
5 F.4th 997 (9th Cir. 2021) ...............................................................12

*Wilderness Soc'y v. Norton*,
434 F.3d 584 (D.C. Cir. 2006)......................................................15, 16

*Yale-New Haven Hosp. v. Leavitt*,
470 F.3d 71 (2d Cir. 2006) ..........................................................10, 25

**Federal Statutes**

5 U.S.C. § 701(a)(2).........................................................................19

## PRELIMINARY STATEMENT

This appeal presents a straightforward question: did the district court err as a matter of law in declining to restore the status quo ante for a large segment of the putative plaintiff classes after staying the 2025 rescission of the SIJS Deferred Action Policy under the APA?[1] The answer is yes. The district court should have reinstated the full 2022 SIJS Deferred Action Policy as it existed before the unlawful rescission, and it should have done so for all members of the putative classes.

None of the obstacles Defendants interpose can divert this Court from this conclusion.

*First*, the appeal is not moot. Tens of thousands of SIJS beneficiaries remain subject to deferred action adjudications without the application of the Strong Factors Standard USCIS specially designed for their protection. This group includes beneficiaries whose SIJS petitions were granted on or after June 6, 2025, and filed before May 10, 2026, when a new rescission policy took effect, as well as those whose renewals applications are pending (collectively, the "Affected SIJS Beneficiaries"). The class claims are inherently transitory and therefore are not mooted, even if all the Individual Plaintiffs' claims are resolved or dismissed while the district court reserves ruling on the fully briefed motion for class certification.

---

[1] All capitalized terms not otherwise defined herein have the meanings ascribed in Plaintiffs' opening brief, Dkt. 42.1.

Moreover, the claims of one Individual Plaintiff and the Organizational Plaintiffs remain live.

*Second*, the Strong Factors Standard outlined in the USCIS Policy Manual was an integral part of the 2022 SIJS Deferred Action Policy and cannot be excised from it. The 2022 Policy Alert announced the policy; the Manual operationalized it. In stressing that the Manual did not determine the outcomes of deferred action adjudications, Defendants misunderstand the law. Discretion as to individual adjudicative decisions does not confer discretion to ignore the required process of agency decision-making.

*Third*, the district court erred in permitting Defendants to abandon the Strong Factors Standard because Defendants failed to comply with the APA in making this change. The USCIS Policy Manual is reviewable under the APA. It is not "non-binding internal guidance," as Defendants claim, but is instead a publicly available repository that directs USCIS adjudicators on how to perform their jobs. The Manual itself states that it is binding on adjudicators, and former USCIS officials, appearing as amici, confirm that it sets the standards employees must follow when adjudicating immigration benefits.

Moreover, the Strong Factors Standard has an undeniable impact on SIJS beneficiaries, greatly increasing the likelihood of grants of deferred action. For this reason, the Affected SIJS Beneficiaries have precisely the same reliance interests in

the application of the Strong Factors Standard as in consideration for deferred action itself. Current evidence shows that, having disregarded the Strong Factors Standard for Affected SIJS Beneficiaries, USCIS is systematically denying them deferred action, while granting deferred action at high rates to SIJS beneficiaries considered under the Strong Factors Standard. The agency has thereby undermined Affected SIJS Beneficiaries' reliance interests after having failed even to consider them in issuing the 2025 Rescission Policy. This is a classic violation of the APA's change-in-position doctrine, which forbids agencies to alter established policies and practices without adequate consideration and explanation.

*Finally*, no alleged difference between the change-in-position doctrine and the *Accardi* doctrine (which forbids agencies to diverge from established policies and practices) can justify the district court's differential treatment of members of the putative classes. Courts, including this one, have long relied on the change-in-position doctrine to condemn agency departures from established policies and practices embodied in sub-regulatory documents like the Policy Manual or the Policy Alert. There is neither a factual nor legal basis for treating SIJS beneficiaries denied consideration for deferred action before formal issuance of the invalid Rescission Policy differently from those denied consideration for deferred action after its announcement: both are entitled to application of the Strong Factors

Standard that distinguished SIJS deferred action from the now all-but-unattainable form of deferred action still theoretically available to all noncitizens.

For all these reasons, Plaintiffs respectfully request that this Court reverse the district court's decision, which allowed USCIS to ignore the Strong Factors Standard in considering deferred action for the Affected SIJS Beneficiaries and remand with instructions requiring the agency to re-adjudicate any deferred action denials under the appropriate standard.

## ARGUMENT

### I. This Appeal Is Not Moot.

The Parties' arguments with respect to mootness are set forth in the briefs filed in connection with Defendants' motion to dismiss this appeal. *See* Dkts. 63.1–71.1. Plaintiffs refer the Court to their opposition and sur-reply briefs, Dkts. 64.1, 70.1, which explain in depth why the issues on appeal are live and will impact tens of thousands of vulnerable youth who are awaiting deferred action adjudications or have received deferred action determinations under an incorrect standard that resulted in improper denials. The Declarations of Dalia Castillo-Granados and John Magliery, submitted with this brief, illustrate the ongoing and harmful impact of the District Court's decision to permit USCIS to ignore the Strong Factors Standard as to a significant segment of the putative classes. By email to Plaintiffs' counsel, Defendants' counsel stated that roughly 95% of beneficiaries in the putative *Accardi*

subclass, whom USCIS has considered for deferred action under the Strong Factors Standard in accordance with the district court's orders, have received grants. Magliery Decl. Ex. A at 1. By contrast, informal surveying of practitioners reveals that less than 1% of Affected SIJS Beneficiaries (one out of 120 adjudications), whom USCIS has considered without reference to this Standard, have received grants. Castillo-Granados Decl. ¶¶ 13–15.

Defendants assert that "the 2025 Rescission … no longer exists." Dkt. 81.1 at 20. Yet they are conducting automatic deferred action determinations for Affected SIJS Beneficiaries without applying the Strong Factors Standard, and they are defending the partial stay that is currently in effect as "appropriately tailored" equitable relief. *Id.* at 25. Defendants are thus implementing and defending the 2025 Rescission Policy they claim no longer exists, revealing that the 2025 Rescission Policy has not been fully superseded, and the issues before the Court are very much live.

The class claims remain viable here even if the Individual Plaintiffs no longer have pending claims. In arguing that the "inherently transitory" exception does not apply, Defendants overstate the requirements of the exception. The crux of the exception's first prong is not whether the opportunity to adjudicate a motion for class certification is "fleeting," *id.* at 22, but rather, whether "it is *uncertain* that a claim will remain live for any individual who could be named as a plaintiff long enough

for a court to certify the class," *Salazar v. King*, 822 F.3d 61, 73 (2d Cir. 2016) (emphasis added).[2]

In *Salazar*, the defendant's "relatively quick[]" processing of applications gave rise to the uncertainty about the longevity of a claim, but swift resolution is not the sole source of such uncertainty. *Id.* at 74. As explained in *Robidoux v. Celani*, 987 F.2d 931, 938–39 (2d Cir. 1993), uncertainty also arises when the timing of the claim—such as when it accrues or when relief can be granted—is unpredictable because it is entirely within the defendant's control. *See also Amador v. Andrews*, 655 F.3d 89, 99–101 (2d Cir. 2011) (the unpredictability of prison release—an event whose timing is entirely within the state's control—meant that no individual plaintiff could be confident her claim would survive to certification); *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010) ("While the ultimate length of confinement does affect the applicability of the 'inherently transitory' exception, the essence of the exception is uncertainty about whether a claim will remain alive for any given plaintiff long enough for a district court to certify the class."). Thus, a claim's unpredictability, not mere brevity, is the animating principle.

[2] Defendants do not address the second prong of the exception, which requires "a constant class of persons suffering the deprivation complained of in the complaint." *Id*. Plaintiffs easily satisfy this prong because of the ongoing, fluid class of tens of thousands of SIJS beneficiaries who have suffered and will continue to suffer the same "deprivation" when they receive deferred action adjudications without consideration under the Strong Factors Standard. Castillo-Granados Decl. ¶¶ 13–15.

That unpredictability is present here. Defendants confirm that "USCIS is not required to adjudicate DA … within any specified timeframe" and that "the agency retains discretion over timing." Dkt. 81.1 at 22–23. Moreover, as Plaintiffs previously explained, "SIJS beneficiaries' eligibility for deferred action is by definition temporary, unpredictable, and shifting." Dkt. 70.1, Ex. A at 4. These uncertainties are what makes the class inherently transient. No Plaintiff eligible for a deferred action determination can predict when that determination will occur or when a visa will become available such that they are no longer eligible for SIJS deferred action.[3]

Defendants' argument that the exception does not apply because the district court reserved ruling on Plaintiffs' class certification motion, Dkt. 81.1 at 22, is also incorrect. This Court has recognized that a trial court's delayed ruling on a promptly filed class certification motion does not undermine the relation back of inherently transitory claims. *See Comer v. Cisneros*, 37 F.3d 775, 799 (2d Cir. 1994) (holding that class claims were not moot "[g]iven the circumstances of this case, in particular, the transitory nature of the public housing market and the court's failure to pass upon

[3] *See* Dkt. 70.1, Ex. A at 4, 10–11 (explaining that a putative class member is not eligible for a deferred action determination until their SIJS petition is approved, which is in Defendants' control; the timing of an affected individual's deferred action adjudication or renewal is also unknown, unpredictable, and entirely within the Defendants' control; and all putative class members are subject to the vagaries of the Visa Bulletin).

the plaintiffs' motion for class certification for over two years"). This Court recognized that "[h]ad the court promptly and properly certified the class, this argument would not be available." *Id.* at 800; *see also Patton v. Fitzhugh*, 131 F.4th 383, 396–99 (6th Cir. 2025) (recognizing that court-caused delay in setting schedule for class certification cannot be held against the putative class when determining whether the exception applies).

In addition to the inherently transitory exception, Plaintiff Y.A.M.'s claims are subject to the "capable of repetition, yet evading review" exception. *See* Dkt. 70.1, Ex. A at 11–13. Defendants' rejoinder that retrogression[4] is "speculative" is belied by the State Department's own Visa Bulletin for August 2026, which continues to warn of possible retrogression as the end of the fiscal year approaches on September 30.[5] Defendants also fail to provide any support for the assertion that "[e]ven if severe retrogression were to re-occur, none of the individual, named plaintiffs would suffer harm." Dkt. 81.1 at 23–24. If retrogression occurs, Y.A.M.'s visa would no longer be immediately available, she would again need deferred

[4] "Retrogression" occurs when changes to USCIS's Visa Bulletin result in individuals previously eligible to apply for adjustment of status (because their "priority date" is "current") falling out of eligibility due to annual visa limits. *See* Dkt. 70.1, Ex. A at 4.

[5] *See* Dep't of State, *Visa Bulletin* at 7-8 (August 2026), https://travel.state.gov/content/dam/visas/Bulletins/visabulletin_August2026.pdf.

action, and she would be subject to adjudication without the Strong Factors Standard.[6]

Lastly, this Court, as part of its inherent power to decide its own jurisdiction, has authority to rule on the standing of the Organizational Plaintiffs if necessary to maintain the appeal, regardless of whether the district court deferred ruling on the issue. *See* Dkt. 70.1, Ex. A at 13–15.

## II. Defendants Obfuscate the Applicable Standard of Review

As Defendants note, Dkt. 81.1 at 19, motions for reconsideration are reviewed for abuse of discretion, *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019). But Defendants obscure what this standard entails. When this Court considers an appeal of a motion to reconsider an APA stay or preliminary injunction, it reviews the legal conclusions underpinning the district court's decision *de novo*, the factual conclusions for clear error, and the scope of relief for abuse of discretion. *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58 (2d Cir. 2020). A district court "necessarily abuse[s] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Transaero, Inc. v.*

[6] On August 10, 2026, USCIS denied Y.A.M.'s deferred action renewal application, noting her current priority date. This denial does not impact Y.A.M.'s mootness arguments because, if this Court grants Plaintiffs' requested relief, Y.A.M.—like all Affected SIJS Beneficiaries—would be entitled to a re-adjudication of her denied deferred action under the appropriate standard, and given retrogression, her priority date may no longer be current at that time.

*La Fuerza Aerea Boliviana*, 162 F.3d 724, 729 (2d Cir. 1998) (internal quotation marks & citations omitted).

The key questions presented by this appeal are questions of law subject to *de novo* review. *See, e.g.*, *Salazar*, 822 F.3d at 72 (reviewing *de novo* whether agency action was reviewable under the APA); *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 77 (2d Cir. 2006) (reviewing *de novo* whether agency action violated change-in-position doctrine).

## III. Plaintiffs Adequately Preserved the Issues on Appeal

Contrary to Defendants' contentions, Dkt. 81.1 at 27–29, Plaintiffs preserved the arguments they raise on appeal. From the outset, Plaintiffs have sought full restoration of "the SIJS Deferred Action Policy," including as set forth in the USCIS Policy Manual. ECF No. 1 ¶¶ 1, 66, 83, 158, Prayer for Relief ¶¶ 6–8, 11–13. Indeed, Plaintiffs' motion for preliminary injunction and APA stay explicitly requested that "the Rescission Policy," including "corresponding changes to USCIS's Policy Manual Update," be set aside, and that Defendants reinstate the SIJS Deferred Action Policy issued March 6, 2022. ECF No. 6 at 38.

After the district court issued the § 705 stay, Plaintiffs filed a reconsideration motion specifically addressing the fact that the district court had not restored the Policy Manual's Strong Factors Standard. ECF No. 61. When the court ordered Plaintiffs to "identify the specific language in the USCIS Policy Manual that they

believe should govern during the duration of the stay," ECF No. 65, Plaintiffs did so, ECF No. 67. The district court then considered and ruled on this argument. SPA-55–59. The issue was raised, briefed, and decided—the paradigmatic case of a preserved issue. *See SEC v. Rajaratnam*, 918 F.3d 36, 42 fn. 4 (2d Cir. 2019) (issue preserved where the district court "expressly decided the question").

Nor are Plaintiffs improperly "reconstruct[ing]" arguments on appeal. Dkt. 81.1 at 29. A party may develop and expand its arguments on appeal so long as the underlying issue was raised in the district court. *See Kaplan v. Old Mut. PLC*, 526 F. App'x 70, 72 (2d Cir. 2013) (holding that arguments made on appeal need not be "identical to those made below" as long as the "elements of the claim were set forth and additional findings of fact are not required") (quoting *Vintero Corp. v. Corporacion Venezolana de Fomento*, 675 F.2d 513, 515 (2d Cir. 1982)). Ultimately, Defendants' preservation argument only distracts from the merits of arguments it cannot answer on the law.

## IV. The 2022 Policy Alert and Pre-Rescission Policy Manual Form a Single Integrated Policy.

Defendants do not dispute that an agency may promulgate a single policy through multiple documents. Dkt. 81.1 at 28 ("That may be so."). Yet they argue against reinstatement of the complete SIJS Deferred Action Policy based on what they misleadingly call "Plaintiffs' attempt to incorporate" the Policy Manual into the Policy. *Id*. at 2. As the record demonstrates, the 2022 Policy Alert and the concurrent

Policy Manual update were components of a single policy. The two documents are structurally linked and complementary in function; USCIS issued both concurrently and rescinded them concurrently as well. Plaintiffs did not err by reading the two documents as indivisible; instead, the court below erred by purporting to reinstate the SIJS Deferred Action Policy through a § 705 stay, yet jettisoning the portion of the Policy set forth in the Policy Manual, which serves as "the authoritative repository for agency policy," Dkt. 44.1 at 11.[7]

Nothing within the four corners of the 2022 Policy Alert suggests that it is a complete statement of the SIJS Deferred Action Policy; instead, it announces that USCIS "is updating the USCIS Policy Manual to consider deferred action" for SIJS beneficiaries. A-258. According to the Alert, the update is "contained in Volume 6 of the Policy Manual," and "is controlling and supersedes any prior guidance." A-259. That contemporaneous Policy Manual update elaborated the use of the Strong Factors Standard in deferred action determinations, set guidelines for terminating individual grants of deferred action, and provided that a four-year grant of deferred action is renewable—core pillars of the Policy on which the Alert is silent. *Id.*

[7] This case is nothing like *Whitewater Draw Natural Resource Conservation District. v. Mayorkas*, *see* Dkt 81.1 at 29, in which plaintiffs sought APA review of "81 DHS regulations and five policy memoranda that implement [eight] programs," some dating to the 1980s, "in one fell swoop." 5 F.4th 997, 1010–12 (9th Cir. 2021).

Eight former USCIS policy officials writing as amici, who collectively have forty-plus years of agency service—including during the time the SIJS Deferred Action Policy was created—agree. Dkt. 44.1 at 6–7. According to these officials, "it is clear that a Policy Alert is not a full representation of the policy update itself and should not be used as the primary source of any policy or guidance." *Id.* at 11. "While the Policy Manual serves as the authoritative repository for agency policy, the primary purpose of Policy Alerts is to serve as a notice mechanism; they are not interpretive rules nor a comprehensive representation of official agency policy." *Id.* Rather, and "[m]ost importantly, each alert makes clear that the underlying Policy Manual controls and supersedes any prior guidance." *Id.*

The centrality of the Policy Manual update is further reflected in its creation process. Policy Manual content "was painstakingly drafted, revised, reviewed, and published [and] was the definitive source of current and official USCIS policy binding on the USCIS workforce and available to the public," *id.* at 13, whereas policy alerts received less stringent review and were intended to provide notice of changes to the Policy Manual, *id.* at 12.

When USCIS formally announced the rescission of the SIJS Deferred Action Policy in June 2025, it followed the same template used in 2022. The 2025 Policy Alert states that the "update" is "contained in Volume 6 of the Policy Manual." A-270. The 2025 Policy Alert expressly states that USCIS "is issuing policy guidance

in the USCIS Policy Manual" and that "the guidance contained in the Policy Manual is controlling and supersed[ing]." A-269–70. In those words, USCIS rescinded not only the 2022 Policy Alert but also the contemporaneous Policy Manual, treating both as a single policy. Having promulgated the two documents together and rescinded them together, Defendants now seek to disaggregate the components of the SIJS Deferred Action Policy to avoid restoration of the status quo ante.

The district court's partial reinstatement was error, not merely because a quantum of guidance was discarded from a comprehensive policy, but because the policy cannot function correctly without its key missing part. Without reinstatement of the Policy Manual and its Strong Factors Standard, USCIS must automatically consider SIJS beneficiaries for deferred action but is left to apply an unspecified standard, effectively nullifying the stay's purpose. To restore the status quo ante, the district court was required to reinstate the SIJS Deferred Action Policy in full. *See League of Women Voters of the U.S. v. U.S. Citizenship & Immigr. Servs.*, No. 25-CV-3777-ABA, 2026 WL 2224637, at *34 (D. Md. Aug. 3, 2026) (staying effective date of a policy alert and "corresponding updates to the USCIS Policy Manual" and reinstating previous iteration of the Manual pending final resolution of the case).

## V. The Rescission of the USCIS Policy Manual's Strong Factors Standard Is Subject to, and Fails, APA Review.

The district court erred in holding that Defendants' changes to the USCIS Policy Manual are not reviewable under the APA and the change-in-position

doctrine, and Defendants obfuscate clear legal principles in unsuccessfully attempting to defend the district court's decision.

### A. The Policy Manual Imposed Binding Obligations on Adjudicators and Has Significant Legal Consequences.

A policy is final, reviewable action under the APA where (1) the action "mark[s] the consummation of the agency's decisionmaking process"; and (2) the action is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks & citation omitted); *see, e.g.*, *Salazar*, 822 F.3d at 82 (considering whether agency action was reviewable under *Bennett*). Defendants appear to argue that *Bennett* does not apply, and that instead, "[c]ourts determining whether an agency has issued a rule that is enforceable against an agency, or merely a non-binding statement of policy, generally follow two lines of inquiry": one that focuses on "the effects of the agency action," and one that "focuses on the agency's expressed intentions." Dkt. 81.1 at 31 (quoting *Wilderness Soc'y v. Norton,* 434 F.3d 584, 595 (D.C. Cir. 2006)). Defendants are mistaken. The two inquiries defined in *Norton* are used in the D.C. Circuit to determine whether a policy is a legislative rule subject to notice and comment or a general statement of policy, not whether an agency action is final and subject to judicial review under the APA. *See Norton*, 434 F.3d at 595.

Applying the incorrect legal standard, Defendants argue that "it is well-settled that general statements of internal policy are not binding on agencies and have no legal effect." Dkt. 81.1 at 30. But each case Defendants cite for this proposition is distinguishable on the same basis as *Norton*: in those cases, plaintiffs claimed the challenged policies violated the APA because the agency did not go through the notice and comment process required for legislative rules, and the question before the court was whether the challenged policy constituted a legislative rule or a general statement of policy. *Gonnella v. SEC*, 954 F.3d 536, 546–47 (2d Cir. 2020); *Noel v. Chapman*, 508 F.2d 1023, 1029, 1031 (2d Cir. 1975); *see also Norton*, 434 F.3d at 595. Here, Plaintiffs have never argued the Policy Manual is a legislative rule requiring notice and comment, so these cases are inapposite.

Similarly, Defendants' analogy to *Kewayfati v. Bondi*, 165 F.4th 342, 353 (5th Cir. 2026), Dkt. 81.1 at 35, is misplaced. Though the *Kewayfati* court stated that an internal agency manual "lack[s] the force of law," *id.* at 353 n.70, it cited *Apter v. Department of Health & Human Services* for this proposition, a case which recognized that non-substantive agency rules, i.e., those not enacted through notice-and-comment rulemaking (like the Policy Manual), are not legislative rules, but interpretive rules that may still be reviewable as final agency action, *see* 80 F.4th 579, 590 (5th Cir. 2023). Notably, the *Kewayfati* court appropriately assessed whether the challenged actions were final agency actions reviewable under the

APA—the question presented in this case—using the *Bennett* factors. 165 F.4th at 350.

Applying *Bennett* here, Defendants' rescission of the SIJS Deferred Action Policy, including as set forth in the Policy Manual, is clearly reviewable. Defendants do not contest the first *Bennett* factor. As for the second, Defendants argue only that the Policy Manual is not "binding" in such a way as to constitute a legislative rule. Dkt. 81.1 at 31–33, 35. But again, this is not the test. Rather, the Court must consider whether the agency's action is "one by which rights or obligations have been determined, or from which legal consequences will flow," *Bennett*, 520 U.S. at 178, including "whether the result of [the agency's decisionmaking] process is one that will directly affect the parties," *Salazar*, 822 F.3d at 82, or have a "substantial practical impact," *Paskar v. UDOT.*, 714 F.3d 90, 98 (2d Cir. 2013). As detailed in Plaintiffs' opening brief, courts regularly find that policy manuals and other sub-regulatory documents satisfy this factor. Dkt. 42.1 at 26–28.

So too does the USCIS Policy Manual. First, the Manual, including the Strong Factors Standard, meaningfully determined the Parties' rights and obligations. For three years, the Manual directed USCIS adjudicators to treat SIJ classification as a "particularly strong positive factor" and the SIJ eligibility criteria as "generally strong positive factors" in deferred action determinations. A-265. The former USCIS officials amici confirm that "adjudicators were bound to this SIJ-specific balancing

test, which was a central feature of the SIJ deferred action policy," Dkt. 44.1 at 15, and Defendants do not dispute this. Internal memoranda and training materials reinforced the Strong Factors Standard, referencing the Policy Manual as "the source for the deferred action policy," and "instruct[ing] officers to grant deferred action where the Form I-360 is approvable and there is no derogatory information." *Id.* at 16. This was the operative standard governing approximately 200,000 SIJS deferred action adjudications, and adjudicators had no practical discretion to ignore it, only discretion in the individual adjudication.[8]

Second, the Policy Manual's Strong Factors Standard clearly had a "substantial practical impact." *Paskar*, 714 F.3d at 98. From the time the SIJS Deferred Action Policy was launched in May 2022 to its *sub silentio* abandonment in April 2025, the approval rate of deferred action for SIJS beneficiaries was more than 99%, while deferred action approval rates for non-SIJS beneficiaries were approximately 27%. *See* Dkt. 42.1 at 33–34. This wide discrepancy in outcomes is a serious legal consequence that supports the reviewability of the elimination of the Strong Factors Standard under the APA. *See id.* at 34.

[8] This easily distinguishes *Arizona v. Biden*, 40 F.4th 375, 380 (6th Cir. 2022), which examined guidance that "outlin[ed] the Department's immigration enforcement priorities and policies" generally, but did not direct adjudicators in the same way the Policy Manual does, *see* Dkt. 42.1 at 26–27; *Bennett*, 520 U.S. at 172.

Finally, the court's finding in *In re Grand Jury Subpoena, Judith Miller,* 438 F.3d 1141, 1152–53 (D.C. Cir. 2006), that reporters and media outlets challenging contempt convictions could not compel an agency to comply with its subpoena guidelines, has no bearing on the reviewability of Policy Manual changes under the APA. *Miller* is not an APA case, and the Supreme Court has recognized that cases "dealing with a criminal prosecution in which respondent seeks judicial enforcement of the agency regulations by means of the exclusionary rule" are distinct from an APA case seeking to invalidate agency action. *United States v. Caceres*, 440 U.S. 741, 754–55 (1979).

### B. Reinstatement of the Complete SIJS Deferred Action Policy, Including the Policy Manual, Would Not Intrude Upon a Matter Committed to Agency Discretion.

Section 701(a)(2) does not bar the relief Plaintiffs seek. That provision forecloses APA review only where the challenged action "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Plaintiffs do not challenge USCIS's exercise of discretion in granting or denying deferred action in any individual case. They challenge USCIS's rescission of the agency-wide policy governing SIJS deferred action adjudications. As the district court recognized, the distinction is dispositive: although individual deferred action determinations involve discretion, the SIJS Deferred Action Policy was "more than a non-enforcement policy" because it established a "program for conferring affirmative immigration relief." SPA-18

(quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 18–19 (2020)); *see* Dkt. 42.1 at 38. The rescission of the Manual is therefore reviewable under the APA. *See Regents*, 591 U.S. at 18–19.

Defendants cannot avoid that conclusion by recasting the Strong Factors Standard, the core of the adjudicatory framework of the affirmative relief program the district court found reviewable, as an unreviewable exercise of prosecutorial discretion. Dkt. 81.1 at 44–46. The same distinction that made the rescission of the SIJS Deferred Action Policy reviewable applies to the Manual: restoring the adjudicatory framework does not direct the result of any particular adjudication. USCIS would retain authority to make an individualized determination in each case.

Nor would restoration of the complete pre-rescission policy constitute judicial policymaking. Plaintiffs do not ask the Court to select a deferred action policy, devise adjudicatory criteria, or assess the wisdom of USCIS's policy choices. They ask the Court to preserve the status quo that existed before the challenged agency action, as § 705 expressly authorizes. *See* Dkt. 42.1 at 22–24. That status quo included both automatic consideration for deferred action and application of the Strong Factors Standard; refusing to restore the Strong Factors Standard leaves in place a hybrid policy USCIS never adopted. *Id*. at 23–24. Indeed, it is the district court's incomplete § 705 stay that constitutes judicial policymaking.

Any changes made to the SIJS Deferred Action Policy must be done within the bounds of the APA. *Regents*, 591 U.S. at 33. The district court found that the 2025 Rescission likely crossed those bounds. SPA-29–30. Enjoining the effects of that likely unlawful action pending review does not constitute judicial policymaking; it enforces the APA.

### C. The District Court Legally Erred When It Required the Strong Factors Standard to Be Applied Only to the *Accardi* Subclass.

The district court erred in concluding that USCIS need apply the Strong Factors Standard only to the proposed *Accardi* subclass, not to beneficiaries granted SIJS after the 2025 Policy Alert, because they are situated differently. SPA-45 n. 24; SPA-56–57. The court's reasoning, which Defendants' opposition repeats, does not withstand scrutiny.

The district court ignored the tandem operation of the *Accardi* and change-in-position doctrines. The *Accardi* doctrine requires agencies to follow their own policies. *Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The change-in-position doctrine requires agencies to provide "a reasoned explanation" when changing a policy, "display awareness" of the change in position, and "consider serious reliance interests." *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 568 (2025) (citation modified). Together, these doctrines mean that when an agency changes policy without any explanation or without sufficient justification, the prior policy remains operative.

The district court found the 2025 Rescission Policy likely arbitrary and capricious because it failed to satisfy two aspects of the change-in-position standard: "consider[ing] reliance interests and reasonably obvious alternatives" to rescission. SPA-29–34. Having found the express rescission *invalid*, the district court nevertheless permitted USCIS to rely on it to disregard the Strong Factors Standard as to petitions approved after June 5, 2025, while simultaneously finding USCIS had to apply the Standard to the *Accardi* subclass because of the agency's likely invalid *sub silentio* departure. SPA-59.

Defendants' opposition mirrors the district court's flaw. It reasons that the invalid 2025 Rescission Policy split the putative class members in two because "the dispute did not develop at the same time for the *Accardi* subclass and the SIJs who received classification later." Dkt. 81.1 at 47. But the appropriate remedy under § 705 of the APA is to restore the "last peaceable uncontested status existing between the parties *before* the dispute developed," *Haitian Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255, 274 (E.D.N.Y. 2025) (internal quotation marks & citation omitted); for all beneficiaries, this was the agency's policy and practice before April 7, 2025, when all Parties acknowledge that USCIS automatically considered SIJS beneficiaries for deferred action under the Strong Factors Standard.

### D. The Change-In-Position Doctrine Compels Restoration of the Manual, Including the Strong Factors Standard.

Plaintiffs have explained how the district court further erred as a matter of law by holding that the change-in-position doctrine does not apply to the USCIS Policy Manual. Dkt. 42.1 at 35–44. Instead of squarely addressing the precedents cited by Plaintiffs and amici administrative law scholars, Dkt. 57.1, Defendants argue for heightened standards not found in relevant caselaw and discount the district court's clear finding of reliance. These arguments fail.

#### 1. Courts regularly apply the change-in-position doctrine to review guidance documents like policy manuals.

The district court erred as a matter of law when it made a false distinction between the change-in-position doctrine and the *Accardi* doctrine and held that the former does not apply to the USCIS Policy Manual. In fact, courts regularly apply the change-in-position doctrine to review agency departures from policies set forth in guidance documents, including policy manuals. Defendants cite no caselaw for the proposition that Plaintiffs must demonstrate it is "clearly established" that the change-in-position doctrine applies to internal agency guidance. Dkt. 81.1 at 55. That is not the appropriate standard because this is not a qualified immunity case.

Plaintiffs are aware of no court that has found the change-in-position doctrine does not apply to agency guidance documents, and amici administrative law scholars support this conclusion, Dkt. 57.1 at 30–31. While the Supreme Court left the

question open in *White Lion*, Plaintiffs have collected cases uniformly applying the change-in-position doctrine to agency guidance post-*White Lion*, *see* Dkt. 42.1 at 39, as the district court did when it partially stayed the 2025 Policy Alert, SPA-25, n.13.

Moreover, as the district court recognized, the *White Lion* Court acknowledged that its own prior cases have applied the change-in-position doctrine to guidance documents when they "institute[] 'a standardized review process' that 'effectively' resemble[s] adjudication." *White Lion*, 604 U.S. at 569 n.5 (quoting *Regents*, 591 U.S. at 18–19). This is precisely the case for the SIJS Deferred Action Policy, which includes the Policy Manual. While Defendants argue that the "policy statement in *Regents* [which pertained to DACA] … differs significantly from the Policy Manual's provisions on DA for SIJs," Dkt. 81.1 at 51, this is wrong. As the district court already found—a finding Defendants have not appealed—the two programs share common features that make the SIJS Deferred Action Policy, like DACA, a "program for conferring affirmative immigration relief." SPA-18 (citation omitted). As with DACA in *Regents*, a change to the SIJS Deferred Action Policy, which includes the Policy Manual, must be analyzed under the change-in-position doctrine.

Defendants' remaining claim that change-in-position review only extends to interpretive guidance dealing with regulatory or contractual obligations, Dkt. 81.1 at 52–53, is not supported by caselaw. Neither *Perez v. Mortgage Bankers Ass'n*, 575

U.S. 92 (2015), nor *Leavitt* applied the change-in-position doctrine *because* of the regulatory or contractual obligations; they were simply aspects of the policies at issue. Rather, in *Perez*, the Supreme Court held that agencies could change their position in an interpretive rule without going through notice-and-comment rulemaking, 575 U.S. at 101, and affirmed that APA review, including change-in-position review, applies to non-formal rules, *id.* at 105–06. The same is true in *Leavitt*: nowhere did this Court state that it reached its conclusions because of the contractual obligations at issue; instead, it relied on the standard articulation of the law that courts may review changes set forth in agency guidance, including manuals. 470 F.3d at 79–80 (reviewing 1986 Manual Provision "because the record indicates that [it] altered historical practice," and reinstating an intermediary letter).[9]

[9] Defendants attempt to distinguish *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350 (S.D.N.Y. 2019) by noting that there, "the [policy] change was not added to the USICS Policy Manual." Dkt. 81.1 at 54. Plaintiffs rely on *R.F.M.*, however, to discuss how courts view a prior policy that is changed, and the prior policy in *R.F.M.* was articulated in several places, *including* the USCIS Policy Manual, 365 F. Supp. 3d at 381, just like the SIJS Deferred Action Policy. Defendants also fail to mention that in *R.F.M.*, USCIS argued that publication in the USCIS Policy Manual constituted adequate notice of a policy change. *Id*. at 382. Defendants equally misrepresent *Physicians for Social Responsibility v. Wheeler*, 956 F.3d 634, 641 (D.C. Cir. 2020), *abrogated on other grounds as recognized by Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218, 1237 (D.C. Cir. 2026). *Wheeler* is one of many examples of courts applying the change-in-position doctrine to guidance documents—be they directives, alerts, or policy manuals. 956 F.3d at 646–47. More importantly, the policy *reinstated* in *Wheeler* was the EPA Peer Review Handbook, *id.* at 645, which sounds a lot like the "handbook" at issue in the instant case, Dkt. 81.1 at 54.

**2. The district court erred as a matter of law in holding that the disclaimer in the USCIS Policy Manual defeats APA review and reduces reliance interests.**

The lower court also erred when it held the disclaimer language in the USCIS Policy Manual defeated any reliance interest in the Strong Factors Standard, as well as when it held that this disclaimer language shielded the Policy Manual from APA review. *See* Dkt. 42.1 at 44–50. Defendants fail to salvage the district court's errors.

First, Defendants fail to materially distinguish the primary cases on which Plaintiffs rely to show that the disclaimer language at issue does not negate APA reviewability. Confronted with identical disclaimer language, the courts in *Damus v. Nielsen*, 313 F. Supp. 3d 317 (D.D.C. 2018), *Abdi v. Duke*, 280 F. Supp. 3d 373 (W.D.N.Y. 2017), *vacated in part on other grounds sub nom.*, *Abdi v. McAleenan*, 405 F. Supp. 3d 467 (W.D.N.Y. 2019), and *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110 (D.D.C. 2018), all correctly found that the Parole Directive at issue was reviewable under the APA, just as the Policy Manual is. The Parole Directive, as Defendants appropriately note, was "intended … to benefit asylum-seekers navigating the parole process." Dkt. 81.1 at 42. So was the SIJS Deferred Action Policy, including the Policy Manual. Its purpose was not only to guide the discretion of USCIS adjudicators in considering deferred action for SIJS beneficiaries, but also to confer benefits on these vulnerable young people, *see* Dkt. 42.1 Part II.B.1, including protection from removal and eligibility for work authorization, *see* A-259.

Nor did the Parole Directive require a grant of parole: "the Directive sets out a series of procedures ICE must undertake to determine *whether* a given asylum-seeker should be granted parole." *Damus*, 313 F. Supp. 3d at 324 (emphasis added). The Parole Directive and SIJS Deferred Action Policy are therefore remarkably similar: both were written for the benefit of a group of noncitizens; both included criteria to guide adjudicators' discretion in determining whether to grant that benefit (parole or deferred action); and both included identical disclaimers. Three courts found that the Parole Directive's disclaimer did not impact APA reviewability. *See, e.g.*, *id.* ("[A]lthough the Directive affirms that parole decisions are discretionary, it also establishes certain minimum procedures and processes that are to be utilized in making these determinations."). The district court should have found the same here.[10]

Second, Defendants are incorrect that Plaintiffs' reliance interests—which the district court held were "serious," SPA-30—are "not the type of serious reliance interests engendered by longstanding policies," Dkt. 81.1 at 58 (citation modified). The district court considered and rejected Defendants' claim that the reliance

[10] Defendants' attempt to distinguish *Tennessee v. Department of Education*, 104 F.4th 577 (6th Cir. 2024), also fails. Like the three documents constituting a single policy in that case, the 2022 Policy Alert and Policy Manual together created a program with legal consequences, not "simply enforcement priorities," and no disclaimer "label" could alter the "substance" of the agency's actions. *Id*. at 600–01 (internal quotation marks and citation omitted).

interests in this case are distinct from those in *Regents* and elsewhere. SPA-29–31 (holding that *Regents* foreclosed Defendants' argument that three years is insufficient to create serious reliance interests). And the district court erred when it stated that the Policy Manual's disclaimer somehow negated SIJS beneficiaries' reliance interests.

All the same reliance interests the district court already held were serious with regard to the SIJS Deferred Action Policy apply just as strongly to the Strong Factors Standard as to other aspects of the Policy. SPA-31, 41 (describing Plaintiffs' reliance interests); *see also* Dkt. 42.1 at 31–32 (same). The disclaimer cannot overcome that. *See Regents*, 591 U.S. at 31 (finding serious reliance interests where policy document contained substantially similar disclaimer language). Indeed, recent evidence showing near-universal deferred action denials without the Strong Factors Standard proves that Plaintiffs' reliance was perhaps strongest as to this core aspect of the Policy. *See supra* pages 4–5.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court reverse the district court's denial of the Motion for Reconsideration and remand with instructions to (1) stay the rescission of the Strong Factors Standard under APA § 705; and (2) order USCIS to reconsider, applying the Strong Factors Standard, (a) any deferred action denials for beneficiaries whose SIJS petitions were approved on

or after June 6, 2025, and filed before May 10, 2026, and (b) any deferred action denials for beneficiaries whose SIJS renewal requests were filed before May 10, 2026.

Respectfully submitted,

*/s/ John M. Magliery*
John M. Magliery

John M. Magliery
DAVIS WRIGHT TREMAINE LLP
1251 6th Avenue, 42nd Floor
New York, NY 10020
212.489.8230

Wendy Wylegala
KIDS IN NEED OF DEFENSE
252 West 37th Street
15th Floor
New York, NY 10018
646.970.2913

Rebecca Sarah Brown
PUBLIC COUNSEL
610 S. Ardmore Avenue
Los Angeles, CA 90005
917.482.9917

Natalie J. Kraner
Catherine Weiss
Alexander Shalom
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas,
17th Floor
New York, NY 10020
212.262.6700

Stephanie E. Norton*
Yulie Landan+
NATIONAL IMMIGRATION
PROJECT
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
202.217.4742

*Not admitted in D.C.; working remotely from Wyoming and admitted in New York only
+Not admitted in D.C.; working remotely from New York and admitted in California only

*Attorneys for Plaintiffs-Appellants*

August 21, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. 32(e) and Local Rule 32.1(4)(a) because this brief contains 6,824 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the 2025 version of Microsoft Word in 14-point Times New Roman font.

*/s/ John M. Magliery*
John M. Magliery

Dated: August 21, 2026

# 26-0236

# United States Court of Appeals

*for the*

# Second Circuit

A.C.R., on behalf of themselves and all others similar situated, J.G.V., on behalf of themselves and all others similar situated, E.A.R., on behalf of themselves and all others similar situated, C.V.R., on behalf of themselves and all others similar situated, Y.A.M., on behalf of themselves and all others similar situated, B.R.C., on behalf of themselves and all others similar situated, J.C.B., on behalf of themselves and all others similar situated, L.M.R., on behalf of themselves and all others similar situated, S.M.M., on behalf of themselves and all others similar situated, CENTRAL AMERICAN REFUGEE CENTER, (CARECEN-NY), CENTRO LEGAL DE LA RAZA,

*Plaintiffs-Appellants,*

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## DECLARATIONS IN SUPPORT OF REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

ALEXANDER SHALOM
NATALIE J. KRANER
CATHERINE WEISS
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500

JOHN MAGLIERY
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas,
42nd Floor
New York, New York 10020
(212) 489-8230

*Attorneys for Plaintiffs-Appellants*

*(For Continuation of Appearances See Inside Cover)*

CP COUNSEL PRESS (800) 4-APPEAL • (395989)

– v. –

KRISTI NOEM, Secretary, U.S. Department of Homeland Security (official capacity), UNITED STATES DEPARTMENT OF HOMELAND SECURITY, JOSEPH EDLOW, Director, United States Citizenship and Immigration Services (official capacity), UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ROSE KENDRICK, Acting Director, United States Citizenship and Immigration Services National Benefits Center (official capacity),

*Defendants-Appellees.*

WENDY WYLEGALA
KIDS IN NEED OF DEFENSE
252 West 37th Street, Suite 1500W
New York, New York 10018
(646) 677-9914

STEPHANIE E. NORTON
NATIONAL IMMIGRATION PROJECT
1763 Columbia Road, NW
Suite 175, No. 896645
Washington, DC 20009
(617) 217-9727

REBECCA S. BROWN
*Public Counsel*
610 South Ardmore Avenue
Los Angeles, California 90005
(213) 385-2977

*Attorneys for Plaintiffs-Appellants*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| A.C.R., *et al*,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security (official capacity), *et al.*<br><br>Defendants-Appellees. | Case No. 26-236<br><br>**DECLARATION OF JOHN M. MAGLIERY IN SUPPORT OF PLAINTIFFS-APPELLANTS' REPLY BRIEF** |

I, John M. Magliery, declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a Partner at Davis Wright Tremaine LLP, counsel for Plaintiffs-Appellants. I submit this declaration in support of Plaintiffs-Appellants' Reply Brief. I have personal knowledge of the matters stated herein and am competent to testify.

2. Attached as **Exhibit A** is a true and correct copy of email correspondence between the parties between May 21, 2026 and June 9, 2026.

3. **Exhibit A** reflects statements by Defendants-Appellees on June 3, 2026, **reporting** the number of deferred action adjudications conducted for members

of the proposed *Accardi* subclass as of May 27, 2026, the number of grants of deferred action, and the number of deferred action adjudications pending.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of August, 2026 in New York, New York.

*/s/ John M. Magliery*
John M. Magliery

# Exhibit A

NATIONAL IMMIGRATION PROJECT

**Yulie Landan <yulie@nipnlg.org>**

# ACR v. Noem - Individual Plaintiff J.G.V. & Accardi Subclass

**Ellie Norton** <ellie@nipnlg.org> Tue, Jun 9, 2026 at 3:30 PM
To: "Isaev, Oleksiy (CIV)" <Oleksiy.Isaev@usdoj.gov>
Cc: "25-0030013@nipnlg.legalserver.org" <25-0030013@nipnlg.legalserver.org>, "Silvis, William (CIV)" <William.Silvis@usdoj.gov>, "Masetta Alvarez, Katelyn (CIV)" <Katelyn.Masetta.Alvarez@usdoj.gov>, John Magliery <johnmagliery@dwt.com>, "Kraner, Natalie J." <NKraner@lowenstein.com>, "Shalom, Alexander" <AShalom@lowenstein.com>, Wendy Wylegala <WWylegala@supportkind.org>, "Weiss, Catherine" <CWeiss@lowenstein.com>, Stepanie Galy <sgaly@supportkind.org>, Rebecca Scholtz <rebecca@nipnlg.org>, Rachel Davidson <rachel@nipnlg.org>, Yulie Landan <yulie@nipnlg.org>, "Elie-Meyers, Joseph" <JosephElieMeyers@dwt.com>, AK Shee <akshee@dwt.com>, Monica Gibbons <monicagibbons@dwt.com>, Zoe McKinney <zoemckinney@dwt.com>, Rebecca Brown <rbrown@publiccounsel.org>

Dear Oleksiy,

Thank you for this update. As counsel for the putative classes, we have sought this information to ensure USCIS's compliance with the Court's stay order.

Regards,
Ellie

On Wed, Jun 3, 2026 at 2:11 PM Isaev, Oleksiy (CIV) <Oleksiy.Isaev@usdoj.gov> wrote:

> Good afternoon Counsel,
>
> Could you please provide the basis for the information that you request below? We are unaware of anything that would entitle Plaintiffs to the below information, as a class has not been certified and Plaintiffs are not challenging USCIS's Dec. 2, 2025 policy or Jan. 1, 2026 policy. Plaintiffs can always file a FOIA request to request this information.
>
> Nonetheless, because the district court ordered the government to re-adjudicate the *Accardi* subclass using the previous policy pending the stay, here is the information requested about that subclass: As of May 27, 2026, USCIS has considered 5,849 approved SIJ petitioners for DA for the *Accardi* subclass and granted DA for 5,537. As of May 27, 2026, there are 3,985 approved SIJ petitioners with DA decisions pending. The policies that you cite below regarding the high-risk countries are not impacting USCIS's adjudication of deferred action for individuals within the *Accardi* subclass whose SIJ petitions were approved.
>
> We can also confirm that USCIS will not apply the new DA policy to SIJ beneficiaries whose SIJ petitions or SIJ deferred action renewal applications were filed before May 10, 2026.
>
> Thank you for your time.
>
> Very Respectfully,
>
> Oleksiy Isaev
>
> Trial Attorney
>
> U.S. Department of Justice, Civil Division

Office of Immigration Litigation

P.O. Box 878 Ben Franklin Station

Washington, DC 20044

(cell) 202-431-1481

***This communication, including any attachments, is covered by federal and state law governing electronic communications and may contain confidential and legally privileged information. If the reader of this message is not the intended recipient, the reader is hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited. If you have received this in error, please reply immediately to the sender and delete this message.***

---

**From:** Ellie Norton <ellie@nipnlg.org>
**Sent:** Friday, May 29, 2026 10:27 AM
**To:** Isaev, Oleksiy (CIV) <Oleksiy.Isaev@usdoj.gov>
**Cc:** 25-0030013@nipnlg.legalserver.org; Silvis, William (CIV) <William.Silvis@usdoj.gov>; Masetta Alvarez, Katelyn (CIV) <Katelyn.Masetta.Alvarez@usdoj.gov>; John Magliery <johnmagliery@dwt.com>; Kraner, Natalie J. <NKraner@lowenstein.com>; Shalom, Alexander <AShalom@lowenstein.com>; Wendy Wylegala <WWylegala@supportkind.org>; Weiss, Catherine <CWeiss@lowenstein.com>; Stepanie Galy <sgaly@supportkind.org>; Rebecca Scholtz <rebecca@nipnlg.org>; Rachel Davidson <rachel@nipnlg.org>; Yulie Landan <yulie@nipnlg.org>; Elie-Meyers, Joseph <JosephElieMeyers@dwt.com>; AK Shee <akshee@dwt.com>; Monica Gibbons <monicagibbons@dwt.com>; Zoe McKinney <zoemckinney@dwt.com>; Rebecca Brown <rbrown@publiccounsel.org>
**Subject:** Re: [EXTERNAL] Re: ACR v. Noem - Individual Plaintiff J.G.V. & Accardi Subclass

Good morning counsel,

I'm writing to follow up on this - do you know when we can anticipate a response?

Many thanks,

Ellie

On Fri, May 22, 2026 at 12:30 PM Isaev, Oleksiy (CIV) <Oleksiy.Isaev@usdoj.gov> wrote:

> Good afternoon Counsel,
>
> We have received your email and are working on providing you with an update.
>
> Thank you for your time.
>
> Very Respectfully,

Oleksiy Isaev

Trial Attorney

U.S. Department of Justice, Civil Division

Office of Immigration Litigation

P.O. Box 878 Ben Franklin Station

Washington, DC 20044

(cell) 202-431-1481

***This communication, including any attachments, is covered by federal and state law governing electronic communications and may contain confidential and legally privileged information. If the reader of this message is not the intended recipient, the reader is hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited. If you have received this in error, please reply immediately to the sender and delete this message.***

---

**From:** Ellie Norton <ellie@nipnlg.org>
**Sent:** Thursday, May 21, 2026 12:29 PM
**To:** Isaev, Oleksiy (CIV) <Oleksiy.Isaev@usdoj.gov>; 25-0030013@nipnlg.legalserver.org
**Cc:** Silvis, William (CIV) <William.Silvis@usdoj.gov>; Masetta Alvarez, Katelyn (CIV) <Katelyn.Masetta.Alvarez@usdoj.gov>; John Magliery <johnmagliery@dwt.com>; Kraner, Natalie J. <NKraner@lowenstein.com>; Shalom, Alexander <AShalom@lowenstein.com>; Wendy Wylegala <WWylegala@supportkind.org>; Weiss, Catherine <CWeiss@lowenstein.com>; Stepanie Galy <sgaly@supportkind.org>; Rebecca Scholtz <rebecca@nipnlg.org>; Rachel Davidson <rachel@nipnlg.org>; Yulie Landan <yulie@nipnlg.org>; Elie-Meyers, Joseph <JosephElieMeyers@dwt.com>; AK Shee <akshee@dwt.com>; Monica Gibbons <monicagibbons@dwt.com>; Zoe McKinney <zoemckinney@dwt.com>; Rebecca Brown <rbrown@publiccounsel.org>
**Subject:** Re: [EXTERNAL] Re: ACR v. Noem - Individual Plaintiff J.G.V. & Accardi Subclass

Good afternoon counsel,

We write to seek updates from Defendants regarding USCIS's progress in conducting deferred action adjudications, as follows:

- How many deferred action adjudications has USCIS conducted for SIJS beneficiaries in the putative *Accardi* subclass (*i.e.* those whose SIJS petitions were approved between April 7, 2025 and June 5, 2025)?
- How many deferred action adjudications remain forthcoming for SIJS beneficiaries in the putative *Accardi* subclass?
- Is USCIS issuing deferred action decisions for SIJS beneficiaries in the putative *Accardi* subclass who are from one of the 39 countries impacted by the adjudications pause policies (found here and here)?

· Is USCIS issuing employment authorization document application decisions for SIJS beneficiaries with deferred action who file Form I-765, category (c)(14), and are from one of the 39 countries impacted by the adjudications pause?

· Finally, we saw that USCIS issued a new policy on deferred action on May 8, 2026. Please confirm our understanding (pursuant to footnote 4 on page 1 of the Policy Alert) that USCIS will not apply this new policy, or the USCIS Policy Manual provisions it announces, to SIJS beneficiaries whose SIJS petitions or SIJS deferred action renewal applications were filed before May 10, 2026.

Thank you in advance for your response.

Best,

Ellie

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

- [redacted]

  [redacted]

- [redacted]

  [redacted]

[redacted]

[redacted]

[redacted]

# Declaration in Support

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| A.C.R., *et al.*,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security (official capacity), *et al.*,<br><br>Defendants-Appellees. | Case No. 26-236 |

**DECLARATION OF DALIA CASTILLO-GRANADOS IN SUPPORT OF PLAINTIFFS-APPELLANTS' REPLY BRIEF**

Dalia Castillo-Granados, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I submit this declaration in support of Plaintiffs-Appellants' Reply Brief. I make this declaration based on personal knowledge and information made known to me in the course of my professional experience, and if called as a witness, I could and would testify competently to the following:

**Background and Relevant Experience**

2. I am the director at the American Bar Association (ABA) Children's Immigration Law Academy (CILA). CILA is a project of the ABA Commission on

Immigration, and an expert legal resource center based in Houston, Texas. CILA's mission is to educate and empower advocates who guide immigrant youth through complex legal procedures. CILA builds capacity for those working to advance the rights of immigrant youth seeking protection through training, technical assistance, collaboration, and resource creation.

3. I am a co-founder of CILA along with my colleagues Yasmin Yavar and Meredith Linsky. I have been the director of CILA since its founding in 2015. Prior to starting CILA, I was a senior attorney at Kids in Need of Defense (KIND) from February 2012 to November 2015, a staff attorney at Tahirih Justice Center from May 2011 to February 2012, a clinical supervising attorney at the University of Houston's Immigration Clinic from September 2010 to May 2011, and a Greenberg Traurig, LLP Equal Justice Works fellow at Catholic Charities' Cabrini Center from September 2008 to September 2010.

4. I make this declaration based on the experience I have gained through my work and in my personal capacity.

5. I am a graduate of the University of Houston Law Center and have been a member in good standing of the State Bar of Texas since 2008. Throughout my career, I have represented hundreds of children in their immigration proceedings, many while they were detained by the Office of Refugee Resettlement before they reunified with family members. The most common form of relief for my clients was

Special Immigrant Juvenile Status (SIJS). I represented dozens of children and families before Texas state courts (most often in family court) to obtain a state court order with specific SIJS findings/determinations. I also represented youth before USCIS to seek SIJS, and before USCIS and the immigration courts to seek lawful permanent residence.

6. In my role at CILA, I provide individualized technical assistance to attorneys on case specific questions, with the majority of technical assistance questions submitted relating to SIJS. I also create written resources on different topics related to children's immigration law, including SIJS. I have co-authored two law review articles on SIJS: one in 2017 titled, "A New Legal Framework for Children Seeking Special Immigrant Juvenile Status," and one in 2022 titled, "The Racial Justice Imperative to Reimagine Immigrant Children's Rights: Special Immigrant Juveniles as a Case Study."[1] In 2023, I co-authored the "Special Immigrant Juvenile Status (SIJS) Manual for Texas Practitioners" with my colleagues at CILA.[2] In October 2024, I updated a written resource at CILA on "The

---

[1] Dalia Castillo-Granados & Yasmin Yavar, *A New Legal Framework for Children Seeking Special Immigrant Juvenile Status*, 20 RICH. PUB. INT. L. REV. 49 (2017), https://scholarship.richmond.edu/cgi/viewcontent.cgi?article=1388&context=pilr; Dalia Castillo-Granados et al., *The Racial Justice Imperative to Reimagine Children's Rights: Special Immigrant Juvenile Status as a Case Study*, 71 AM. U. L. REV. 1779 (2022), https://aulawreview.org/blog/the-racial-justice-imperative/.
[2] CILA, *Special Immigrant Juvenile Status (SIJS) Manual for Texas Practitioners* (May 8, 2023), https://cilacademy.org/2023/05/08/new-cila-resource-special-immigrant-juvenile-status-sijs-manual-for-texas-practitioners/.

ABCs of SIJS: An Overview of Special Immigrant Juvenile Status."[3] Since early 2024, I have also co-authored the following resources with external partners: "Breaking Down The Visa Bulletin: What SIJS Advocates Need To Know," "Understanding the SIJS Parental Benefit Prohibition: What Advocates and Clients Need to Know," "Practice Alert: Arguments for Using the SIJS-based Adjustment Provision to Adjust Based on a Different Petition," "Quick Guide: Defending SIJS Clients in Removal Proceedings," and "Template Motion: Defending SIJS Clients in Removal Proceedings."[4]

7. I also participate in CILA's two working groups for advocates dedicated to SIJS issues, one for Texas-based advocates and one for advocates

---

[3] CILA, *The ABCs of SIJS: An Overview of Special Immigrant Juvenile Status* (Oct. 11, 2024), https://cilacademy.org/resource-file/the-abcs-of-sijs-an-overview-of-special-immigrant-juvenile-status/.

[4] End SIJS Backlog Coalition et al., *Breaking Down the Visa Bulletin: What SIJS Advocates Need to Know* (Apr. 22, 2024), https://cilacademy.org/2024/04/23/new-resource-explainer-on-the-visa-bulletin-for-sijs-advocates/; CILA & National Immigration Project, *Understanding the SIJS Parental Benefit Prohibition: What Advocates and Clients Need to Know* (Oct. 31, 2024), https://cilacademy.org/2024/10/31/new-cila-nipnlg-resource-understanding-the-sijs-parental-benefit-prohibition/; End SIJS Backlog Coalition et al, *Practice Alert: Arguments for Using the SIJS-based Adjustment Provision to Adjust Based on a Different Petition* (Apr. 13, 2026), https://www.ilrc.org/resources/arguments-using-sijs-based-adjustment-provision-adjust-based-different-petition; End SIJS Backlog Coalition et al., *Quick Guide: Defending SIJS Clients in Removal Proceedings* (May 29, 2026), https://cilacademy.org/2026/06/04/updated-resources-to-defend-youth-with-sijs/; End SIJS Backlog Coalition et al., *Template Motion: Defending SIJS Clients in Removal Proceedings* (May 29, 2026), https://cilacademy.org/2026/06/04/updated-resources-to-defend-youth-with-sijs/.

nationwide. Each working group meets on a quarterly basis. Most participants are attorneys working on SIJS cases. The Texas SIJS Working Group focuses on Texas state court updates, USCIS adjudication issues, and immigration court updates. The National SIJS Working Group focuses on national adjudication trends. Participants share questions and issues, and CILA provides updates on new policies, procedures, and resources available.

8. I am also a frequent speaker on SIJS. In 2021, I was a co-panelist at the virtual American Immigration Lawyers Association (AILA) National Conference on "Preventing Removal of SIJ Beneficiaries." In 2022, I was a co-panelist at the Federal Bar Association Immigration Law Conference on "SIJS Updates and Best Practices." In 2023, I was a co-panelist at the State Bar of Texas Annual Advanced Child Protection Law Course on "How Special Immigrant Juvenile Status Can Help in Your Child Protection Case." In 2024, I was a co-panelist at the AILA National Conference in Chicago, Illinois on "Representing Unaccompanied Children: Our Ethical Obligations and Taking Care of Ourselves," which included a section on representing clients in SIJS cases. In 2025, I was a co-panelist at the ASISTA special webinar on "Updates on SIJS and Unaccompanied Children Policies and Practices." In 2026, I was a co-panelist at the AILA Midwinter Conference in Guanacaste, Costa Rica, on "Humanitarian Hot Topics," which included a section on updates in SIJS cases.

9. In early 2021, I joined the steering committee for the End SIJS Backlog Coalition, a national group of directly impacted SIJS youth and allied advocates working together to end the SIJS backlog and its harms, including by protecting the rights of SIJS youth to remain safely in the United States while they pursue permanency. I have been a steering committee member since that time, and I also co-lead a working group of the Coalition focused on monitoring immigration enforcement trends against SIJS beneficiaries and providing support to advocates for SIJS youth to defend against their removal while they await a visa.

**Recent SIJS Deferred Action Adjudications by USCIS**

10. The End SIJS Backlog Coalition hosts a "SIJS Deferred Action Policy Survey" through which legal representatives report non-identifying information about deferred action adjudications by USCIS for their SIJS clients. The survey has been distributed through listservs, on written resources, and individually by email when needed. In my leadership role within the Coalition, I am among those who monitor the results submitted through this survey.

11. In the wake of the district court's November 19, 2025, order staying the 2025 termination of the SIJS deferred action policy, ECF No. 60, and the court's subsequent January 14, 2026, order denying Plaintiffs' motion for reconsideration of footnote 24 of the November 19, 2025 order, ECF No. 76, we began to see USCIS resume deferred action adjudications for SIJS beneficiaries, which had halted in the

wake of the challenged 2025 rescission policy. For several months beginning in February 2026, we heard largely about SIJS deferred action adjudications for those in the putative "*Accardi* sub-class"—*i.e.* those SIJS beneficiaries whose SIJS petitions had been approved without any deferred action adjudication between April 7, 2025, and June 5, 2025, inclusive. These individuals are the only SIJS beneficiaries entitled to adjudication under the "Strong Factors Standard" pursuant to the district court's orders. ECF Nos. 60, 76.

12. Of our survey respondents who reported a deferred action adjudication for a SIJS beneficiary falling into the putative *Accardi* subclass, 28 (84.8 percent) reported deferred action approvals, and 5 (15.2 percent) reported deferred action denials. I am also aware that, according to Government data reported to Plaintiffs' counsel, as of May 27, 2026, USCIS had conducted deferred action adjudications for 5,849 putative *Accardi* subclass members, granting deferred action in 5,537 of those cases. This translates to a deferred action approval rate for those in the putative *Accardi* subclass of about 95 percent.

13. In mid-June 2026, the Coalition started to receive numerous survey responses about deferred action adjudications for SIJS beneficiaries who are not in the putative *Accardi* subclass and thus not entitled to adjudication under the Strong Factors Standard, *i.e.* those whose SIJS petitions were approved on or after June 5, 2025, and filed before May 10. 2026 (when a new policy rescinding deferred action

for SIJS beneficiaries took effect). Since June 12, 2026, we have received 70 such survey responses. USCIS denied deferred action in all but one of these young people's cases; only one received an approval. The 69 deferred action denials were issued in June, July, and August 2026. 64 of the 69 survey respondents reported that the SIJS beneficiary in question had neither criminal nor juvenile arrest history. Based on information gathered in correspondence directly with these survey respondents, we also learned that USCIS did not issue biometrics notices for the deferred action adjudication in any of the cases before issuing a deferred action denial,[5] did not request any further information, and did not provide any reason for the denial of deferred action.[6]

14. The single deferred action approval amongst the 70 total adjudications I just discussed involved an 11-year-old child with severe medical issues; information about his medical condition was included in the SIJS petition. The child's three siblings had also applied for and received SIJS, but each of them received a deferred action denial.

---

[5] A biometrics notice is the mechanism USCIS uses to schedule appointments to collect fingerprints, photographs, digital signatures, and other information to run background checks on applicants for immigration benefits. USCIS, Preparing for Your Biometric Services Appointment, https://www.uscis.gov/forms/filing-guidance/preparing-for-your-biometric-services-appointment (last updated 4/30/26).

[6] I was unable to verify these facts for one of the 69 survey respondents.

15. In addition to the 70 cases described above, I have also learned about 50 similar recent deferred action denials for SIJS beneficiaries falling outside the *Accardi* subclass through additional information provided by survey respondents and through listserv posts by practitioners. I am aware of no grants of deferred action to SIJS beneficiaries outside the *Accardi* subclass through these other channels.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on the 20th day of August, 2026, in Houston, Texas.

Dalia Castillo-Granados

Dalia Castillo-Granados